```
                  UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF OHIO
                        WESTERN DIVISION


STEVENS TRANSPORT TL, INC.,  :    NO.  1:11-CV-00236
                             :
                             :
          Plaintiff,         :
                             :
     v.                      :    ORDER AND OPINION
                             :
GREAT AMERICAN INSURANCE     :
COMPANY,                     :
                             :
          Defendant.         :
```

This matter is before the Court on Defendant's Motion for Judgment on the Pleadings (doc. 19), the responsive memoranda, and Plaintiff's Motion for Leave to File Amended Complaint (doc. 23), and the responsive memoranda.  For the reasons that follow, the Court GRANTS Defendant's motion (doc. 19), thus rendering Plaintiff's motion moot.

I.   Background

The facts of this matter, which for the purposes of the instant motions are taken to be true, are alleged in Plaintiff's complaint as follows.  Plaintiff is a freight broker and entered into a broker/carrier agreement with FBT, Inc.  Pursuant to that agreement, Plaintiff brokered the transportation of a load of butter from Land O'Lakes to FBT, which, in turn, brokered it to

1

Billings Transport.[1]  The load originated in Ohio and was bound for California.  Plaintiff is the originating carrier on the bill of lading.  Billings Transport's driver picked up the load and signed the bill of lading.  After picking up the load, the driver was involved in a single vehicle rollover accident on or about October 14, 2008.  The cargo was returned to the loading facility for inspection, and it was determined that a majority of the load was destroyed because of the accident and the sensitive nature of the product.

As it was required to do, Plaintiff paid Land O'Lakes $57,679.94 on May 1, 2009, thus becoming subrogated to Land O'Lakes' rights as the shipper to recover from Billings Transport, the delivering carrier.  On June 2, 2009, Plaintiff filed suit against Billings Transport and FBT, Inc., and on July 14, 2010, Plaintiff obtained a judgment against Billings Transport.  On December 20, 2010, Plaintiff obtained a turnover order against Billings Transport from a Texas judge, which required Billings Transport to turn over any claims it had against Defendant, which, at the time of the accident, insured Billings Transport.

On June 15, 2009, Defendant issued to Billings Transport a disclaimer of coverage, effectively denying Billings Transport's claim for insurance coverage for the accident.  On February 7,

---

[1] Neither FBT, Inc., nor Land O'Lakes, nor Billings Transport is a party to this suit.

2

2011, Defendant sent Plaintiff a copy of that denial. On February 15, 2011, Plaintiff initiated the instant suit in a Texas state court, and the case was removed to federal court and then transferred here. Through its original complaint, Plaintiff sought relief under Texas' insurance code and for breach of contract and breach of good faith and fair dealing. Through its proposed amended complaint, Plaintiff seeks declaratory relief under Ohio law and alleges claims for breach of contract and breach of the duty to act in good faith and engage in fair dealings.

Defendant moves the Court for Judgment on the Pleadings on the basis that Plaintiff's contractual claims fail as a matter of law because the contract contains a suit-limitation clause, which bars Plaintiff's suit. In addition, Defendant argues that Plaintiff's Texas-based claims fail for lack of a connection to Texas and for failure to state a claim under Texas' insurance code.

Plaintiff seeks to remedy the Texas-law issue with its amended complaint, which removes all Texas-law claims and bases the claims in Ohio law. The amended complaint does not address the suit-limitation clause, but Plaintiff argues that the contractual language is, minimally, ambiguous and therefore should be construed in its favor.

Defendant's motion for judgment on the pleadings and Plaintiff's motion for leave to file an amended complaint are each ripe for the Court's decision.

**II. The Applicable Standards**

The Court may grant a party's motion for judgment on the pleadings under Federal Rule 12(c) if it determines that the moving party is entitled to judgment as a matter of law. In arriving at such determination, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." Tucker v. Middleburg-Legacy Place, 539 F.3d 545, 549 (6th Cir. 2008). In its evaluation, the Court may consider the "pleadings, which consist of the complaint, the answer, and any written instruments attached as exhibits." Felix v. Dow Chemical Co., No. 2:07-CV-971, 2008 WL 207857, *1 (S.D. Ohio Jan. 23, 2008). The Court may also "consider materials in addition to the pleadings without converting the motion to one for summary judgment if the materials are public records or are otherwise appropriate for the taking of judicial notice." Id. The same standard of review applies to both 12(c) motions for judgment on the pleadings and 12(b)(6) motions to dismiss. Tucker, 539 F.3d at 549.

With respect to the motion for leave to file an amended complaint, Federal Rule of Civil Procedure 15(a) provides in pertinent part:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by

4

> leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a). The United States Supreme Court has held that motions for leave to amend pleadings should be liberally granted unless the motions are brought in bad faith or the proposed amendments would cause undue delay, be futile, or unfairly prejudice the opposing parties. Foman v. Davis, 371 U.S. 178, 182 (1962); see also Moore v. City of Paducah, 790 F.2d 557, 561 (6th Cir. 1986) (quoting Tefft v. Seward, 689 F.2d 637, 639-40 (6th Cir. 1982)).

**III. Discussion and Conclusion**

Plaintiff's proposed amended complaint addresses the Texas-law related problems with its original complaint. The Court sees no evidence of bad faith here and further finds that allowing Plaintiff to amend the complaint would not cause undue delay or be unfairly prejudicial to Defendant. However, because the suit-limitation clause bars Plaintiff's suit, and the proposed amended complaint does not correct that fatal flaw, allowing Plaintiff to file its proposed amended complaint would be futile.

The contract language at issue is found in the Commercial Inland Marine Conditions section of the insurance policy[2] and

---

[2] Although the insurance contract between Billings Transport and Defendant was not attached to either the complaint or the answer, the Court may nonetheless properly consider the insurance policy without converting the instant motion to a

reads: "No one may bring legal action against [Defendant] under this Coverage Part unless: ...The action is brought within 2 years after you first have knowledge of the direct loss or damage."  The critical questions that must be answered in order to determine whether Plaintiff's suit is barred by this contractual provision are: (i) Does "direct loss or damage" mean only loss or damage to the insured property, as Defendant asserts, or does "damage" reference damage to Billings Transport-<u>i.e.</u>, the damage suffered when Defendant denied coverage to Billings, as Plaintiff asserts? and (ii) Does the fact that the provision is found in the Commercial Inland Marine Conditions section mean that it only limits actions brought under that section, as Plaintiff asserts, or does it apply to the contract as a whole, as Defendant asserts?

The Court has no trouble reaching the conclusion that "loss or damage" refers to loss of or damage to the load of butter and not, as Plaintiff asserts, the damage the insured suffered when Defendant denied coverage under the policy.  It is abundantly clear

---

motion for summary judgment because the policy is incorporated into the complaint by reference and is an integral part of the complaint.  See <u>Rondigo, L.L.C. v. Township of Richmond</u>, 641 F.3d 673, 681 (6th Cir. 2011) (without converting a motion to dismiss to one for summary judgment, court may consider exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein).  Here, the complaint not only references the insurance policy, but the breach of contract and breach of good faith and fair dealings claims are predicated on it.

from reading the policy that the policy insures against loss to the "Covered Property," which term is used throughout the contract. That term is defined in the Motor Truck Cargo Coverage Form as follows: "We will pay for 'loss' to Covered Property from any of the Covered Causes of Loss. 1. Covered Property means property of others that you have accepted for transportation as a motor carrier under your tariff and bill of lading or other written contract." The contract then goes on to clarify that property will only be covered while it is "contained in or on a land vehicle while in 'transit' and/or during 'loading' and 'unloading'...." The only reasonable interpretation of the language and purpose of the insurance policy is that the load of butter was the Covered Property, and Billings Transport was insured against damage or loss to the load of butter.

Interestingly, Plaintiff itself seems to recognize that "loss" refers to the loss or damage to the butter cargo: Plaintiff uses the term "loss" in its filings–including its original complaint, its proposed amended complaint, and its response to Defendant's motion–to refer to the loss of the butter cargo. For example, Plaintiff states, "At the time of the loss [referring to the damaged load of butter], Great American insured Billings" (docs. 1, 23, 24). Why does Plaintiff refer to the damage to the butter load as "the loss"? Because that is the natural and obvious meaning of the word and is reflective of the purpose of the

7

insurance contract. It simply strains the meaning of the term "loss" and would upend the purpose of the insurance contract to read "loss" to mean financial damage suffered upon the denial of a claim on the policy. Plaintiff's attempts to expand the meaning of the word and the purpose of the contract are not well-taken.

As to whether the suit-limitation clause applies to the whole policy, the Court similarly finds that the contract is clear. The limitation provision is, indeed, found in the Commercial Inland Marine Conditions. Plaintiff asserts that the Motor Truck Cargo Coverage Form should control here, and the Commercial Inland Marine Conditions form is inapplicable. However, the "Additional Conditions" section of the Motor Truck Cargo Coverage Form explicitly incorporates the provisions of the Commercial Inland Marine Conditions form: "The following conditions apply in addition to the Commercial Inland Marine Conditions and Common Policy Conditions...." In addition, as Defendant notes, the Motor Truck Cargo Coverage modifies the Commercial Inland Marine Conditions in explicit ways (e.g., "The following is added to Commercial Inland Marine Loss Condition J...."), lending further support for the finding that the Commercial Inland Marine Conditions are an integral part of the insurance policy, and the provisions set forth therein, including the suit-limitation clause, are binding on the parties.

Because the suit-limitation clause applies to any suit

8

brought on the contract, and because "loss or damage" refers to loss of or damage to the load of butter, the two-year clock started ticking on October 14, 2008, which was the date of the accident that damaged the load. Plaintiff's suit was filed on February 15, 2011, well-outside the two-year limitation agreed to by Defendant and Billings Transport.

The fact that Plaintiff did not have standing to bring the suit until it received the turnover order from the Texas judge does not save Plaintiff's case because, when Plaintiff did receive the order, it acquired only the same rights as Billings Transport had. Billings Transport was subject to the suit-limitation defense, which necessarily means that Plaintiff, standing in Billings Transport's shoes, is likewise subject to that defense. See, e.g., Citizens Fed. Bank, F.S.B. v. Brickler (1996), 114 Ohio App.3d 401, 683 N.E.2d 358, 364 ("[T]he assignee of a contract takes that contract with all rights of the assignor and subject to all defenses that the obligor may have had against the assignor. The assignee stands in the shoes of the assignor and has no greater rights against the obligor than the assignor had.").

Because Plaintiff's proposed amended complaint does not cure the defects discussed herein, granting Plaintiff leave to amend would be futile. Therefore, for the foregoing reasons, the Court GRANTS Defendant's Motion for Judgment on the Pleadings (doc. 19) and DENIES Plaintiff's Motion for Leave to File Amended

9

Complaint (doc. 23).

SO ORDERED.

Dated: May 2, 2012                /s/ S. Arthur Spiegel
                                  S. Arthur Spiegel
                                  United States Senior District Judge

10